**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

JASON SMITH,

                    Plaintiff,

       - v -                                  Civ. No. 9:15-CV-401
                                                         (BKS/DJS)

SERGEANT A. COSTELLO, *Bare Hill Correctional Facility*; TAMMY WHITE, *Vocational Supervisor*, *Bare Hill Correctional Facility*,

                    Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

JASON SMITH
Plaintiff, *Pro Se*
12-A-4092
Auburn Correctional Facility
135 State Street
Box 618
Auburn, New York 13021

HON. ERIC T. SCHNEIDERMAN          NICOLE E. HAIMSON, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Jason Smith brings this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that the Defendants violated his Constitutional rights while he was incarcerated at Bare Hill Correctional Facility. Dkt. No. 1, Compl. Currently pending before

the Court is Defendant Tammy White's Motion to Dismiss, filed pursuant to Federal Rule of Civil Procedure 12(b)(6).[1]  Dkt. No. 18.  Plaintiff filed a Letter notifying the Court and opposing Counsel that he will not oppose the Motion and will instead rest on his conclusion that he properly stated a claim.  Dkt. No. 21.  For the reasons that follow, it is recommended that the Motion be **denied**.

## I.  STANDARD OF REVIEW

On a motion to dismiss, the allegations of the complaint must be accepted as true.  *See Cruz v. Beto*, 405 U.S. 319, 322 (1972).  The trial court's function "is merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof."  *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468 U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, . . . matters to which the court may take judicial notice[,]" as well as documents incorporated by reference in the complaint.  *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)); *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991) (citing FED. R. CIV. P. 10(c)).  Moreover, "even

---

[1] Defendant Costello has answered the Complaint.  Dkt. No. 16.

if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d at 47). However, "even if a document is 'integral' to the complaint, it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document." *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006). "It must also be clear that there exists no material disputed issues of fact regarding the relevance of the document." *Id.*

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for

the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, I consider the plausibility of Plaintiff's Complaint.

## II. DISCUSSION

### A. Plantiff's Complaint

In accordance with the applicable standard of review, the facts adduced from the Complaint, as previously summarized by the Honorable Brenda K. Sannes, United States

District Judge, in her initial review,[2] are taken as true:

> On April 12, 2013, plaintiff and all the inmates on his dorm were questioned about a note found on correctional officer Brunet's desk, and all dorm privileges were suspended. Compl. at 2. Plaintiff had a visit with his fiancee on April 13, 2013, and both of them were harassed and threatened. *Id.* at 2-3. Plaintiff's fiancee told plaintiff that she would file a complaint with the superintendent about the harassment. *Id.* Later that evening, plaintiff was harassed and threatened by defendant Costello, who warned plaintiff that he had better find out who placed the note on Brunet's desk. *Id.* at 3. Plaintiff called his fiancee and asked her to contact Internal Affairs, the Attorney General, and the superintendent of his facility about defendant Costello's threats. *Id.* On April 14, 2013, plaintiff was "confined in his cube all day per" defendant Costello's instructions but was allowed to go to his work assignment as a yard porter. *Id.* When plaintiff entered the yard, he was singled out and searched by the yard officers, who confiscated a letter that plaintiff was writing to the Governor about defendant Costello's threats. *Id.* at 4. Plaintiff was taken to a draft room, where he was assaulted by defendant Costello. *Id.* Defendant Costello told plaintiff that he would be the "fall guy" unless he found out who put the note on Brunet's desk. *Id.* at 4-5. On April 15, 2015, plaintiff's fiancee contacted Captain Galleger and told him "all that transpired over the course of the past three (3) days." *Id.* at 5. Later that day, defendant Costello assaulted plaintiff again and then escorted him to the special housing unit ("SHU"). *Id.* at 5-6. On April 16, 2013, defendant Costello issued plaintiff a misbehavior report. *Id.* at 6.
>
> On April 19, 2013, defendant White presided over plaintiff's subsequent Tier III disciplinary hearing to address defendant Costello's misbehavior report. *Id.* Defendant White . . . den[ied] plaintiff some of his witnesses, refus[ed] to listen to or review plaintiff's phone records, [did] not allow[] plaintiff to review confidential statements, and den[ied] plaintiff's request for a handwriting expert. *Id.* Defendant White found plaintiff guilty of the charges lodged against him and sentenced him to serve ninety days in SHU, with a corresponding loss of recreation, packages, commissary, phone, and good time. *Id.* at 7. On June 23, 2014, defendant White's disposition was reversed and expunged from plaintiff's records.[] *Id.* Plaintiff was released from SHU on either July 7 or 8, 2013. *Id.*

Dkt. No. 10 at pp. 4-5 (footnote three omitted).

---

[2] On June 18, 2015, the Honorable Brenda K. Sannes, United States District Judge, *sua sponte* reviewed the Plaintiff's filings, pursuant to the authority granted by 28 U.S.C. §§ 1915(e) and 1915A, and issued a Decision and Order dismissing certain claims while allowing others to proceed. Dkt. No. 10.

With regard to Defendant White, in reviewing Plaintiff's constitutional claims, Judge Sannes assessed that Plaintiff had raised a due process violation pursuant to the Fourteenth Amendment, and a retaliation claim pursuant to the First Amendment. In so ruling, Judge Sannes stated that she "express[ed] no opinion as to whether Plaintiff's claims can withstand a properly filed motion to dismiss or for summary judgment." *Id*. at p. 7. Defendant White now seeks dismissal of both claims stated against her.

## B. Due Process Claims

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v. Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*.

With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. at 478.

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to

"atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215, F.3d 227, 232 (2d Cir. 2000)). "In those situations, a district court must 'make a fact-intensive inquiry' . . . examining 'the

actual circumstances fo SHU confinement' in the case before it without relying on its familiarity with SHU conditions in previous cases . . . ." *Id*. at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d 133, 137 (2d Cir. 1998); *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997).

In the case at bar, Defendant White contends that the actual time Plaintiff spent in SHU amounted to no than seventy-four or seventy-five days, below the intermediate level, and, in any event, Plaintiff failed to allege that the conditions he endured while in SHU were different than the typical SHU restrictions. Dkt. No. 18-1, Def.'s Mem. of Law, at p. 5 (citing cases describing "typical restrictive conditions experienced by an inmate serving a disciplinary penalty").

Plaintiff alleges that 1) he was taken to SHU on April 15, 2013; 2) he received a misbehavior report on April 16, 2013; 3) his disciplinary hearing commenced on April 19, 2013, and ended on April 24, 2013, which resulted in a guilty finding and a sentence of ninety days in SHU with corresponding loss of privileges and a loss of good time credit. Compl. at ¶¶ 37, 40, 43, 44, 45, & 46. According to the Complaint, Plaintiff was released from SHU on or about July 7 or 8, 2013; thereafter, on or about June 23, 2014, his sentence was reversed on appeal and expunged from his records. *Id*. at ¶¶ 47-48. It is not clear why Plaintiff would be released early from SHU prior to his sentence being reversed almost a year later, nor is it clear if the dates provided in the Complaint are accurate. This confusion is exacerbated by the conflicting statement within Plaintiff's "Wherefore" clause wherein he purports to have spent ninety days in SHU, not seventy-four or seventy-five. Thus, in terms

of assessing whether Plaintiff had a liberty interest, the issue of the duration of his confinement in SHU is far from clear. But we can surmise that he was confined for no less than seventy-four days, and perhaps no more than ninety, pushing him relatively close to that intermediate duration noted by the Second Circuit.

In viewing the facts favorably to Plaintiff, and drawing all reasonable inferences, the Court finds it prudent then to take a look at the actual conditions Plaintiff endured while in SHU. Although in the body of his Complaint Plaintiff fails to include allegations with regard to the conditions of his SHU confinement, he includes a lengthy description in his "Wherefore" clause which reads as follows:

> Jason Smith prays for judgement in is favor and damages in his favor against all defendants in a total amount sufficient to compensate him for unlawful confinement, the loss of privileges and quality of life in his prison living conditions, loss of the limited liberty enjoyed by prisoners, resulting from his segregated confinement, in that plaintiff was confined for 23 hours a day in a cell roughly 60 feet square for approximately 90 days, and deprived of most of my personal property as well as the ability to work, attend mandatory program, watch television, attend outdoor recreation in a congregate setting with the ability to engage in sports and other congregate recreational activities, associate with other prisoners, attend meals with other prisoners, attend Jumáh services, and physical abuse suffered by him due to the discrimination, evil intentions, willful and malicious conduct, as well as being denied (during a hearing) basic right to due process of law . . . .

Compl. at Wherefore Clause.

Defendant argues that this recitation amounts to nothing more than a description of normal SHU conditions, thus Plaintiff has not sufficiently pled that he endured atypical and significant confinement. The Court disagrees that at this stage of the litigation such a determination can be made. Indeed, the Second Circuit explicitly precludes a court from

relying upon its familiarity with SHU conditions in previous cases and instead requires a "fact-intensive inquiry" when the confinement reaches an intermediate duration. Such factual findings, however, would be an inappropriate undertaking in making a recommendation on the present Motion before the Court. "A more appropriate vehicle for resolution of this issue is a motion for summary judgment, where the [c]ourt may rely on matters outside the pleadings, including affidavits from persons with knowledge that address the conditions under which plaintiff was confined and how those conditions compared to conditions imposed on the general population and similar administrative confinements." *Withrow v. Donnelly*, 2004 WL 2047878, at * 2 (W.D.N.Y. Sept. 14, 2004) (prisoner confined for seventy-seven (77) days) (citing *Palmer v. Richards*, 364 F.3d at 66); *accord Davis v. Barrett*, 576 F.3d 129 (2d Cir. 2004).

Thus, the very nature of the Motion precludes dismissal under the facts alleged because I am limited in my ability to compare the conditions of Plaintiff's confinement to that of the rest of the prison population, segregated or otherwise. Accordingly, I recommend **denying** Defendant's Motion to Dismiss this claim.

### C. Retaliation Clam

Next, Defendant White seeks dismissal of the retaliation claim asserted against her. In his Complaint, Plaintiff alleges that Defendant White retaliated against him for his efforts to complain to the Governor and other outside entities. Compl. at ¶ 56.

Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. *See Gill v. Pidlypchak*, 389 F.3d 379, 380-81 (2d Cir. 2004). Central to such

claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *See id.* at 81-83. Because of the relative ease with which claims of retaliation can be incanted, however, as exemplified by Plaintiff's claims in this action, the courts have scrutinized such retaliation claims with particular care. *See Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983). As the Second Circuit has noted,

> [t]his is true for several reasons. First, claims of retaliation are difficult to dispose of on the pleadings because they involve questions of intent and are therefore easily fabricated. Second, prisoners' claims of retaliation pose a substantial risk of unwarranted judicial intrusion into matters of general prison administration. This is so because virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act.

*Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citations omitted), *overruled on other grounds, Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002).

In order to state a *prima facie* claim under section 1983 for unlawful retaliation in a case such as this, a plaintiff must advance non-conclusory allegations establishing that 1) the conduct or speech at issue was protected; 2) the defendants took adverse action against the plaintiff; and 3) there was a causal connection between the protected activity and the adverse action – in other words, that the protected conduct was a "substantial or motivating factor" in the prison official's decision to take action against the plaintiff. *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492). If the plaintiff carries this burden, the defendants must then show, by a preponderance of the evidence, that they would have taken action against the

plaintiff "even in the absence of the protected conduct ." *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. at 287. Under this analysis, adverse action taken for both proper and improper reasons may be upheld if the action would have been taken based on the proper reasons alone. *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

Admittedly, the allegations of fact with regard to the retaliation claim against Defendant White are slim. Nevertheless, in light of the alleged due process violations, and in liberally construing the allegations in the Complaint, it appears that Plaintiff is accusing Defendant White of being biased during the disciplinary hearing and further retaliating against him with an unfounded disciplinary sentence. Though narrow, the Court finds that Plaintiff sets forth a claim for retaliation where the exercise of his First Amendment rights is clearly alleged, he received a guilty disciplinary determination and sentenced to time in SHU, which would amount to an adverse action, which, incidentally was later reversed on appeal for reasons not yet known to the Court, and the timing of the protected exercise and the adverse action are of such close duration as to allow the Court to infer, for purposes of this Motion, a causal connection. Notwithstanding this preliminary finding, on a fuller record, the Court may be in a better position to determine whether in fact there was a connection between the guilt determination and Plaintiff's exercise of his First Amendment rights, and/or whether notwithstanding any improper intent, Defendant White also had a legitimate, non-retaliatory reason for finding Plaintiff guilty of the charged infractions. Accordingly, the Court recommends **denying** Defendant's Motion to Dismiss the retaliation claim.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendant's Motion to Dismiss (Dkt. No. 18) be **denied**; and it is further

**RECOMMENDED**, that if the above recommendation is accepted, Defendant White should be directed to respond to the Complaint in accordance with the Federal Rules of Civil Procedure. Upon receipt of Defendant White's answer, an amended scheduling order will be issued setting new discovery and dispositive motion deadlines; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court.

**FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: February 3, 2016
 Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge