**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

JASON SMITH,

         Plaintiff,

  - v -                Civ. No. 9:15-CV-0401
                      (BKS/DJS)

SERGEANT A. COSTELLO and TAMMY WHITE,

         Defendants.
_____

**APPEARANCES:**            **OF COUNSEL:**

JASON SMITH
Plaintiff, *Pro Se*
410 Saint Nicholas Ave., Apt. 7C
New York, New York 10027

HON. ERIC T. SCHNEIDERMAN      NICOLE E. HAIMSON, ESQ.
Attorney General of the State of New York   Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224


**DANIEL J. STEWART**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Jason Smith brings this action, pursuant to 42 U.S.C. § 1983, claiming that Defendants violated his constitutional rights when he was incarcerated at Bare Hill Correctional Facility ("Bare Hill") while in the custody of the Department of Corrections and Community Supervision ("DOCCS"). Dkt. No. 1, Compl. Briefly summarized,[1] Plaintiff alleges that, on April 12, 2013, Defendant Costello, a correctional officer, began to harass him in the course of

---

[1] For a more complete summary of Plaintiff's allegations, reference is made to the initial screening of this action, performed pursuant to 28 U.S.C. §§ 1915(e) and 1915A. Dkt. No. 10 at pp. 4-5.

investigating a threatening note that was found on another correctional officer's desk. *See id.* at ¶¶ 7, 11, 15, & 17. Plaintiff drafted a letter complaining of the harassment to the Governor, but the letter was confiscated by Costello on April 14. *Id.* at ¶¶ 28-29. In retaliation for writing the letter, Costello assaulted Plaintiff several times and on April 15, issued him a misbehavior report charging him with writing the threatening note. *Id.* at ¶¶ 30, 39, 42, & 43. At a subsequent Tier III disciplinary hearing, held on April 19 and April 24, Defendant White found Plaintiff guilty of the charges and sentenced him to serve ninety days in the special housing unit ("SHU"). *Id.* at ¶¶ 44-46. Plaintiff asserts the following claims: (1) an Eighth Amendment excessive force claim against Defendant Costello; (2) First Amendment retaliation claims against Defendants Costello and White; and (3) a Fourteenth Amendment due process claim against Defendant White. *Id.*

Presently before the Court is Defendants' Motion for Summary Judgment, to which Plaintiff has not responded. Dkt. No. 38, Defs.' Mot. Summ. J. The grounds for Defendants' Motion are that: (1) Plaintiff failed to exhaust his administrative remedies on his excessive force and retaliation claims; (2) Plaintiff's retaliation claims fail because (a) there is no causal connection between any protected speech and Defendants' actions, and (b) Defendants would have taken the actions they did regardless of any protected activity on the part of Plaintiff; and (3) Plaintiff's due process claim fails because he has failed to establish a protected liberty interest. *Id.* For the reasons that follow, the Court recommends that Defendants' Motion be **granted** on the grounds that Plaintiff failed to exhaust administrative remedies on his excessive force and retaliation claims and failed to establish a protected liberty interest for his due process claim.

## I. SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)). "A verified complaint is to be treated as an affidavit for summary judgment purposes, and therefore will be considered in determining whether material issues of fact exist." *Colon v. Coughlin*, 58 F.3d at 872.

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any

genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

When a motion for summary judgment is unopposed, the court may "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." FED. R. CIV. P. 56(e)(3). "If the evidence adduced in support of the summary judgment motion does not meet [the movant's] burden [of production], 'summary judgment must be denied *even if no opposing evidentiary matter is presented*.'" *Amaker v. Foley*, 247 F.3d 677, 681 (2d Cir. 2001) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970)). "An unopposed summary judgment motion may also fail where the undisputed facts fail to 'show that the moving party is entitled to judgment as a matter of law.'" *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004) (quoting *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996)).

## II. EXHAUSTION

### A. Exhaustion Procedure

The Prison Litigation Reform Act ("PLRA") provides, in pertinent part, that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other

Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citation omitted). Exhaustion in prisoner cases covered by § 1997e(a) is mandatory. *Id*. at 524; *Ross v. Blake*, 136 S. Ct. 1850, 1856 (2016) (stating that mandatory language of § 1997e(a) forecloses judicial discretion to craft exceptions to the requirement). Furthermore, § 1997e(a) requires "proper exhaustion," which means using all steps of the administrative process and complying with "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). The defendant bears the burden of proving that the administrative remedies available to the plaintiff were not exhausted prior to the initiation of a civil action. *Howard v. Goord*, 1999 WL 1288679, at *3 (E.D.N.Y. Dec. 28, 1999).[2]

In New York, the administrative remedies consist of a three-step Inmate Grievance Program ("IGP"). First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." *Id.* at § 701.5(a). In addition, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* at § 701.6(g). The IGRC reviews and investigates the formal complaint and then issues a written determination. *Id*. at § 701.5(b).

---

[2] Exhaustion of administrative remedies is an affirmative defense which must be raised by the defendant. *See Jenkins v. Haubert*, 179 F.3d 19, 28-29 (2d Cir. 1999). Defendants properly raised the affirmative defense in their Answer. *See* Dkt. Nos. 16 at ¶ 9 & 28 at ¶ 9.

Second, upon appeal of the IGRC decision, the superintendent of the facility reviews the IGRC's determination and issues a decision. *Id*. at § 701.5(c). Finally, upon appeal of the superintendent's decision, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of all three levels of review may a prisoner seek relief in federal court. *Bridgeforth v. Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. at 524); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

In addition to the formal grievance procedure described above, the regulations provide for an expedited grievance procedure for claims of employee "harassment." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. Pursuant to this expedited procedure, the inmate may first report the incident to the employee's immediate supervisor. *Id.* at § 701.8(a). The inmate's allegations are then given a grievance number and the superintendent (or his designee) must promptly decide whether the grievance, if true, would represent a bona fide case of harassment. *Id.* at §§ 701.8(b) & (c).

If the superintendent determines that the allegations do not represent a bona fide case of harassment, the allegations are automatically routed to the IGRC for resolution according to the formal three-step grievance procedure outlined above. *Id.* at § 701.8(c). If the superintendent finds that the allegations do represent a bona fide case of harassment, then he must either initiate an in-facility investigation by higher ranking personnel, or request an investigation by the Inspector General's Office, and if criminal activity is involved, the superintendent may request an investigation by the New York State Police Bureau of Criminal Investigations. *Id.* at §§ 701.8(d); *see also Perez v. Blot*, 195 F. Supp. 2d 539, 542-43 (S.D.N.Y. 2002) (describing the grievance system).

The superintendent must render a decision within twenty-five calendar days of receipt of the grievance. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8(f). If the superintendent fails to respond within this required time-frame, the inmate may appeal his grievance to CORC by filing a notice of decision to appeal with the inmate grievance clerk. *Id*. at § 701.8(g). If the inmate receives a response from the superintendent and wishes to appeal to CORC, he must file a notice of decision to appeal with the inmate grievance clerk within seven calendar days of receipt of the response. *Id*. at § 701.8(h).

In sum, the expedited procedure set forth above allows inmates to bypass filing a formal grievance by instead "reporting" the incident. *See Perez v. Blot*, 195 F. Supp. 2d at 544. Such a process is wholly consistent with the underlying concern of employee harassment.

### B. Plaintiff's Failure to Exhaust Administrative Remedies

Here, the record establishes that Plaintiff did not fully exhaust his administrative remedies on his excessive force or retaliation claims. Records maintained by CORC indicate that Plaintiff did not appeal a grievance to CORC relative to the incidents that allegedly occurred in April 2013. Dkt. No. 38-12, Decl. of Jeffery Hale, dated June 6, 2016, Ex. A. Furthermore, Plaintiff admitted several times at his depositions that he did not file a formal grievance on these claims. Dkt. No. 38-6, Decl. of Nicole Haimson, dated Aug. 23, 2016, Ex. A, Dep. of Jason Smith, dated Dec. 9, 2015 ("Pl.'s Dep. (Dec. 9, 2015)"), at p. 114; Dkt. No. 38-7, Haimson Decl., Ex. B, Dep. of Jason Smith, dated June 14, 2016 ("Pl.'s Dep. (June 14, 2016)"), at pp. 64-65. Although Plaintiff alleges that he might have written complaint letters outside of the grievance procedure, *see* Pl.'s Dep. (June 14, 2016) at pp. 65-66, "the law is well-settled that informal means of communicating and pursuing a grievance, even with senior prison officials, are not sufficient under the PLRA." *Timmons v. Schriro*, 2015 WL

3901637, at *3 (S.D.N.Y. June 23, 2015). The fact that Plaintiff asserted his excessive force and retaliation claims in his appeal of his disciplinary hearing is also insufficient to grieve those claims. *See Ortiz v. McBride*, 380 F.3d 649, 653-54 (2d Cir. 2004).

A prisoner's failure to exhaust administrative remedies may nonetheless be excused if remedies were unavailable to the inmate. *Ross v. Blake*, 136 S. Ct. at 1858. As the Supreme Court recently stated, "[a]n inmate . . . must exhaust available remedies, but need not exhaust unavailable ones." *Id.* The Court stated three potential circumstances where administrative remedies may be unavailable: (1) where the administrative procedure technically exists but operates as a "dead end – with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes, practically speaking, incapable of use"; and (3) where prison administrators "thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1859-60.[3]

It is undisputed that Bare Hill and Upstate Correctional Facility ("Upstate"), which Plaintiff was transferred to on April 26, 2013, had inmate grievance programs available to inmates during the relevant time period. Hale Decl. at ¶ 11. At his depositions, Plaintiff raised several possible excuses for his failure to access the grievance process. First, Plaintiff claimed he did not understand the grievance process at the time, *see* Pl.'s Dep. (Dec. 9, 2015) at p. 123; Pl.'s Dep. (June 14, 2016) at pp. 72-75; however, Plaintiff also acknowledged that he received orientations on the grievance

---

[3] The Second Circuit previously set forth a three-part inquiry for when a failure to exhaust may be excused: "(1) administrative remedies are not available to the prisoner; (2) defendants have either wived the defense of failure to exhaust or acted in such a way as to estop them from raising the defense; or (3) special circumstances, such as a reasonable misunderstanding of the grievance procedures, justify the prisoner's failure to comply with the exhaustion requirement." *Ruggiero v. Cty. of Orange*, 467 F.3d 170, 175 (2d Cir. 2006) (citing *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)). The Second Circuit has stated that "*Ross* largely supplants our *Hemphill* inquiry by framing the exception issue entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).

program at both Bare Hill and Upstate, *see* Pl.'s Dep. (June 14, 2016) at pp. 70-71 & 74. Plaintiff also claimed that he quickly learned to file grievances. Pl.'s Dep. (Dec. 9, 2015) at p. 124; Pl.'s Dep. (June 14, 2016) at pp. 67-68. Next, Plaintiff claimed that his mail was tampered with. Pl.'s Dep. (June 14, 2016) at p. 68 & 77. Yet Plaintiff offered no support for this allegation, and admitted that he never saw anyone tamper with his mail. *Id.* at p. 79. This allegation is also misdirected because Plaintiff admits that he did not attempt to file a grievance with the IGRC relative to these claims. *Id.* at p. 77.

Finally, Plaintiff claims that he did not file a grievance because he was afraid of retaliation by the Defendants. Pl.'s Dep. (Dec. 9, 2015) at pp. 116-17; Pl.'s Dep. (June 14, 2016) at p. 89. Under *Ross*, threats or other intimidation by prison employees may render administrative remedies unavailable. 136 S. Ct. at 1860. The Second Circuit has stated that "[t]he test for deciding whether the ordinary grievance procedures were available must be an objective one: that is, would 'a similarly situated individual of ordinary firmness' have deemed them available." *Hemphill v. New York*, 380 F.3d 680, 688 (2d Cir. 2004). A "generalized fear of retaliation" is insufficient to excuse a failure to exhaust. *See Brown v. Napoli*, 687 F. Supp. 2d 295, 297 (W.D.N.Y. 2009); *Harrison v. Stallone*, 2007 WL 2789473, at *5-6 (N.D.N.Y. Sept. 24, 2007). As to Defendant White, Plaintiff articulates no more than a "generalized fear of retaliation." Plaintiff states that she did not threaten him, but that he was nonetheless intimidated because she was "helping her fellow co-workers." Pl.'s Dep. (June 16, 2016) at p. 90.

With respect to Defendant Costello, on the other hand, Plaintiff alleges that he made a specific threat against him to not file a grievance. *Id.* at pp. 90-91; Compl. at ¶ 42. Specific threats of retaliation may reasonably deter an inmate from filing a grievance, particularly when the threats

follow an assault. *See, e.g.*, *Hemphill v. New York*, 380 F.3d at 688 (remanding for determination of availability of administrative remedies where officer threatened to retaliate against the plaintiff if he filed a complaint). However, any issue of fact about the availability of administrative remedies at Bare Hill created by Plaintiff's allegations regarding threats by Costello, does not extend to Upstate. Plaintiff was transferred to Upstate on April 26, 2013, twelve days after Plaintiff alleges that Costello first assaulted him. An inmate must submit a grievance "within 21 calendar days of the alleged occurrence." N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(a). Additionally, an inmate may request an extension of the time limit within forty-five days of the date of the alleged occurrence. *Id.* § 701.6(g). Plaintiff therefore had nine days to file a grievance and thirty-three days in which to request an extension after his transfer to Upstate. Plaintiff speculates that Costello might have known correctional officers at Upstate, Pl.'s Dep. (June 16, 2016) at pp. 91-92, but that amounts to a mere "generalized fear of retaliation." Thus, while Plaintiff's allegations regarding Costello's threats may create an issue of fact about the availability of administrative remedies at Bare Hill, they do not create an issue of fact about the availability of administrative remedies at Upstate. *See Wallace v. Fisher*, 2015 WL 9275001, at *4 (N.D.N.Y. Dec. 18, 2015) (finding that even if administrative remedies were unavailable to the plaintiff at first correctional facility, there was no issue of material fact that they were available following his transfer to a second correctional facility); *Newman v. Duncan*, 2007 WL 2847304, at *4 (N.D.N.Y. Sept. 26, 2007) (finding that administrative remedies were available to inmate where he was transferred out of facility where officer had threatened him).

Accordingly, the Court finds that Plaintiff has not shown any issue of fact regarding the availability of administrative remedies that would excuse his failure to exhaust. The Court therefore

recommends that Plaintiff's excessive force and retaliation claims be **dismissed** for failure to exhaust.

### III. PLAINTIFF'S DUE PROCESS CLAIM

The misbehavior report issued by Defendant Costello charged Plaintiff with violations of prison rules 102.10 – Threats and 107.11 – Harassment. Dkt. No. 38-4, Decl. of Albert Costello, dated Aug. 22, 2016, at ¶ 10. On April 19 and April 24, 2013, Defendant White conducted a Tier III disciplinary hearing on the misbehavior report. Dkt. No. 38-10, Decl. of Tammy White, dated Aug. 22, 2016, at ¶¶ 6-7. At the conclusion of the hearing, White found Plaintiff guilty of the charges based upon the inmate misbehavior report; the testimony of Costello, who investigated the threatening note; the testimony of witnesses requested by Plaintiff, who were unable to verify Plaintiff's presence in the dorm; and the testimony of Burnet, the correctional officer who received the threatening note. Dkt. No. 38-8, Haimson Decl., Ex. C at p. 22. White sentenced Plaintiff to three months in SHU, with corresponding loss of recreation, packages, commissary, telephone privileges, as well as a recommendation of three months loss of good time. White Decl. at ¶ 7. White's hearing determination was reversed and expunged by the director of SHU on June 24, 2013. Haimson Decl., Ex. C at pp. 1-2. Plaintiff was released on July 11, 2013. Dkt. No. 38-9, Haimson Decl., Ex. D at p. 1. Since Plaintiff was first put in SHU on April 15, 2013, he served approximately eighty-seven days in SHU.

Plaintiff claims that he was deprived of due process because Defendant White did not allow Plaintiff to call three of his witnesses; declined to order a hand writing analysis of the threatening note; and refused to listen to recordings of phone conversations that would supposedly establish

Plaintiff's location at the time the threatening note was placed. Compl. at ¶ 54. Throughout his confinement in SHU, Plaintiff claims that he was confined for twenty-three hours a day; deprived of most of his personal property; and unable to attend programs, watch television, attend congregate outdoor recreation, associate with other inmates, attend congregate meals, and attend congregate religious services. *Id.* at p. 9. Defendants argue that summary judgment is appropriate on Plaintiff's due process claim because there is no protected liberty interest at stake. Dkt. No. 38-2, Defs.' Mem. of Law at pp. 16-19.

In order to establish a procedural due process claim arising out of a prison disciplinary proceeding, a plaintiff must show that he (1) possessed an actual liberty interest and (2) was deprived of that interest without being afforded sufficient process. *Tellier v. Fields*, 280 F.3d 69, 80 (2d Cir. 2000). A prisoner's liberty interest is "generally limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995); *see also Sealey v. Giltner*, 116 F.3d 47, 52 (2d Cir. 1997). Whether the conditions of a segregation amount to an atypical and significant hardship "turns on the duration of the segregation and a comparison with the conditions in the general population and in other categories of segregation." *Acre v. Walker*, 139 F.3d 329, 336 (2d Cir. 1998); *see also Sealey v. Glitner*, 197 F.3d at 586 ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

The Second Circuit has held that, under "normal conditions," confinement in SHU for a period of up to 101 days is not an atypical hardship, while confinement for more than 305 days is an atypical hardship. *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004); *Colon v. Howard*, 215

F.3d 227, 231-32 (2d Cir. 2000). The Second Circuit has stated that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—'development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215 F.3d at 232). "In those situations, a district court must 'make a fact-intensive inquiry,' examining the 'actual circumstances of SHU confinement' in the case before it." *Id.* at 65 (citations omitted).

In this case, Plaintiff served eighty-seven days in SHU, which, under normal conditions, is insufficient to establish that he experienced an atypical hardship. The evidence provided in support of Defendants' Motion establishes that all of Plaintiff's complaints fall within the "normal" conditions of confinement in SHU. Plaintiff's complaint that he was confined for twenty-three hours a day simply describes normal SHU conditions, in which inmates are confined in their cells for twenty-three hours a day, permitted one hour of outdoor exercise a day, and allowed a minimum of three showers per week. Dkt. No. 38-11, Decl. of Donald Venettozzi, dated Aug. 18, 2016, at ¶ 8. Similarly, Plaintiff's complaint that he was denied certain privileges and deprived of his personal property describes typical SHU restrictions. *Id.* Inmates in SHU are limited as to the personal property they may possess, but are allowed certain items. *Id.* Plaintiff admits that he was allowed to have certain items in his cell, including books, magazines, and pictures; writing materials; religious items; hygienic products; prescription medications; and clothing and bedding. Pl.'s Dep. (June 14, 2016) at pp. 37-46. Inmates in SHU have limited access to commissary, Venettozzi Decl. at ¶ 8, which Plaintiff admits he received, Pl.'s Dep. (June 14, 2016) at pp. 46-47. Inmates in SHU are not permitted to attend meals, recreation, or religious services with other inmates, since the purpose of SHU to separate certain inmates from the general prison population. Venettozzi Decl.

at ¶ 9. However, Plaintiff was able to practice his religion in his cell and received meals that were consistent with his beliefs. Pl.'s Dep. (June 16, 2016) at pp. 52-53.

Thus, Plaintiff's claims that he was confined for twenty-three hours a day; deprived of most of his personal property; and not permitted to watch television or attend activities with other inmates fail to establish that he was confined under atypical conditions. Accordingly, because Plaintiff's confinement does not implicate a protected liberty interest, the Court recommends that summary judgment be **granted** on his due process claim against Defendant White.

### IV. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 38) be **GRANTED** and this action **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14)[4] days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

---

[4] If you are proceeding *pro se* and are served with this Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d). If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday. FED. R. CIV. P. 6(a)(1)(C).

Date: March 3, 2017
      Albany, New York

_____
Daniel J. Stewart
U.S. Magistrate Judge